NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MID CONTINENT STEEL & WIRE, INC.,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**OMAN FASTENERS, LLC,**
*Defendant-Appellant*

---

2023-1039

---

Appeal from the United States Court of International Trade in Nos. 1:15-cv-00214-MAB, 1:15-cv-00228-MAB, Chief Judge Mark A. Barnett.

---

Decided: January 7, 2025

---

ADAM H. GORDON, The Bristol Group PLLC, Washington, DC, argued for plaintiff-appellee. Also represented by BENJAMIN JACOB BAY, JENNIFER MICHELE SMITH-VELUZ.

MIKKI COTTET, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY; IAN ANDREW MCINERNEY, Office of the Chief Counsel Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

MICHAEL PAUL HOUSE, Perkins Coie LLP, Washington, DC, argued for defendant-appellant. Also represented by ANDREW CARIDAS, NATHAN K. KELLEY, JONATHAN IRVIN TIETZ; DAN L. BAGATELL, Hanover, NH; ANDREW DUFRESNE, Madison, WI; MICHAEL R. HUSTON, Phoenix, AZ.

———————

Before MOORE, *Chief Judge*, SCHALL and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

On remand following this court's decision in *Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530 (Fed. Cir. 2019) (*Mid Continent 2019*), the United States Department of Commerce relied on the financial statement of Sundram Fasteners Limited (Sundram) in determining that Oman Fasteners, LLC was selling its steel nails in the United States for less than fair value. The Court of International Trade (Trade Court) sustained Commerce's determination, rejecting Oman Fasteners' challenges to Commerce's reliance on Sundram's financial statement. On appeal, Oman Fasteners argues, at bottom, that, under the applicable standard of review, we should set aside Commerce's determination because Commerce did not adequately justify its refusal to rely on two alternative financial statements—one from Al Jazeera Steel Products Co. SAOG (Al Jazeera), an Omani manufacturer of steel bars and pipes; the other from L.S. Industry Co., Ltd. (LSI), a Thai manufacturer of steel nails, for which the only

financial statement Oman Fasteners timely submitted was not fully translated. We reject Oman Fasteners' arguments and therefore affirm.

I

In 2014, acting under 19 U.S.C. §§ 1673–1673h, Commerce initiated an antidumping-duty investigation into steel nail products from Oman and several other countries. *Certain Steel Nails from India, the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan, the Republic of Turkey, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value-Investigations*, 79 Fed. Reg. 36019 (June 25, 2014); *see Mid Continent 2019*, 941 F.3d at 534. This court's 2019 opinion summarizes the statutory background and much of the procedural history involving Oman Fasteners, and we do not repeat that discussion here. *Mid Continent 2019*, 941 F.3d at 534–37.

In the determination reviewed by this court in *Mid Continent 2019*, Commerce relied on the financial statement of Hitech Fastener Manufacture (Thailand) Co., Ltd. (Hitech) for the profit portion of a constructed value for Oman Fasteners' relevant products, a crucial part of Commerce's calculation of a dumping margin in this matter and hence of the antidumping duty ultimately imposed on Oman Fasteners. *Id.* at 536–37. This court largely rejected Oman Fasteners' challenges to Commerce's determination, including Oman Fasteners' argument that (for the profit component) Commerce should have used the partially translated LSI financial statement or reopened the record for submission of the full translation. *Id.* at 540–43. This court did agree with Oman Fasteners, however, that the adopted Hitech profit figures might have been affected by government subsidies and that Commerce did not adequately address that issue. *Id.* at 543–45. We therefore ordered a remand for Commerce to "consider the effect of [Hitech's] subsidies on whether the information it selected

was accurate for the relevant statutory purpose." *Id.* at 534.

On remand, Commerce initially stood by its reliance on the financial statement of Hitech, J.A. 3460, but the Trade Court required Commerce to address more fully why Hitech could serve as a reliable surrogate in light of its receipt of subsidies. *Mid Continent Steel & Wire, Inc. v. United States*, 551 F. Supp. 3d 1360, 1366–67 (Ct. Int'l Trade 2021). On such further consideration, Commerce chose no longer to rely on the financial statement of Hitech, but instead to rely on that of Sundram, an Indian producer of high-tensile fasteners and auto components. J.A. 26, 32–33. First, Commerce reasoned that because the six Omani companies whose financial statements were on the record (including Al Jazeera) did not produce comparable merchandise, J.A. 28–29, and because the partially translated financial statements of other companies on the record (including that of LSI) were "not complete," J.A. 29, it would rely on "either Hitech or Sundram, even though both companies received some form of a subsidy," J.A. 31. Then, noting that Hitech's financial statement was not contemporaneous with the period of investigation, but Sundram's was, Commerce decided to rely on Sundram. J.A. 33–34. The Trade Court sustained Commerce's redetermination, which adopted a 4.22% dumping margin. *Mid Continent Steel & Wire, Inc. v. United States*, 586 F. Supp. 3d 1349, 1352–53 (Ct. Int'l Trade 2022).

Oman Fasteners timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

II

"We review Commerce's decision using the same standard of review applied by the Trade Court, while carefully considering that court's analysis. We decide legal issues de novo and uphold factual determinations if they are supported by substantial evidence." *Mid Continent 2019*, 941 F.3d at 537 (citations omitted). "Commerce must

provide an explanation that is adequate to enable the court to determine whether its choices are actually reasonable . . . . We insist that Commerce examine the record and articulate a satisfactory explanation for its action. . . . [W]e uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned . . . ." *Id.* (citations and internal quotation marks omitted).

## A

Oman Fasteners argues that Commerce's selection of Sundram was unreasonable because it did not adequately explain its choice of Sundram over Al Jazeera. Oman Fasteners' Opening Br. at 36–56. We disagree. Commerce provided a discernible and adequate explanation.

Commerce explained why Sundram's products (fasteners) were more comparable to Oman Fasteners' products (nails) than were those of Al Jazeera (neither nails nor fasteners). It noted that "none of the six Omani companies on the record"—including Al Jazeera—"produced merchandise comparable to steel nails or in the same general category as steel nails." J.A. 26–27; *see* J.A. 27 ("none of the Omani [financial statements] on the record indicated that those Omani companies produced steel nails or any merchandise comparable to steel nails"). Commerce elaborated:

> None [of the Omani companies] produce identical merchandise (*i.e.*, steel nails) and none produce comparable merchandise (*i.e.*, fasteners). All six Omani [financial statements] represent companies involved in production of dissimilar merchandise outside of the steel nails general category of merchandise. Therefore, all six Omani [companies] likely do not share similarities to Oman Fasteners in their respective production experiences or raw material consumptions and are not subject to the same supply and demand conditions in the global marketplace as Oman Fasteners. Accordingly,

> these six [financial statements] are less ideal sources . . . vis-à-vis companies which produce and sell subject merchandise.

J.A. 37. As Commerce explained, "Sundram produces high tensile fasteners," which Commerce found comparable to steel nails. J.A. 32. Although Sundram's fasteners have different end uses from those of Oman Fasteners, J.A. 3405–06, it was reasonable for Commerce to select Sundram, which produces fasteners, over Al Jazeera, which does not. Because Sundram's financial statements were "the only contemporaneous [financial statements] on the record reflecting production, sale, and profit from the sale of comparable merchandise," J.A. 34, and "data reflecting the production and profit from sale of comparable merchandise are always preferable to a profit experience wholly dissimilar to the mandatory respondent," J.A. 39, Commerce's reliance on Sundram rather than Al Jazeera was reasonable.

Oman Fasteners suggests that Sundram's receipt of a subsidy (found by Commerce) undercuts its reasonableness as a comparator and that Commerce erred by not explicitly discussing the potential effects of that subsidy. Oman Fasteners' Opening Br. at 36–37, 41–45. But Commerce did note the size of the subsidy: 30 lakhs for the period of investigation. J.A. 30–31; *see* J.A. 3806 (explaining that 30 lakhs is equivalent to roughly $48,663). That figure, the only one before us, is tiny relative to Sundram's total revenue for the period of investigation (about $336 million). J.A. 3806. The insignificance of the subsidy to any profit calculation means that, even if it was unreasonable for Commerce not to address the subsidy more than it did, that error was harmless: It could not have affected the choice of Sundram over Al Jazeera. *See, e.g.*, *SolarWorld Americas, Inc. v. United States*, 962 F.3d 1351, 1359 n.2 (Fed. Cir. 2020) (explaining that harmless-error review applies to Commerce's determinations in the antidumping context); *Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th

1351, 1363 (Fed. Cir. 2023) (concluding that Commerce's harmless error "does not require reversal or correction on remand"). Accordingly, we see no reversible error in Commerce's selection of Sundram over Al Jazeera.

B

Oman Fasteners argues that Commerce should have relied on the partially translated LSI financial statement or reopened the record to accept the fully translated LSI financial statement. Oman Fasteners' Opening Br. at 44–45, 49–51, 56–61. We previously rejected these challenges in *Mid Continent 2019*, and we see no reason to take a different view here. 941 F.3d at 540–42.

Oman Fasteners submitted the partially translated LSI financial statement in violation of Commerce's regulations, which require approval before submission of partial translations. 19 C.F.R. § 351.303(e). Similarly, Oman Fasteners submitted the fully translated LSI financial statement after Commerce's deadline for submission of evidence. *Mid Continent 2019*, 941 F.3d at 541. Oman Fasteners, not Commerce, is to blame for both those failures, and we have not been shown that Commerce had to treat those failures as excusable, whether as resulting from good faith efforts to meet a deadline for providing a full translation or otherwise. *Id.* at 540–42; *see QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("[T]he burden of creating an adequate record lies with [interested parties] and not with Commerce." (second alteration in original)). Whether to accept the partial translation or reopen the record are within Commerce's discretion, which it did not abuse here. *Mid Continent 2019*, 941 F.3d at 540–42. No issue under 19 U.S.C. § 1677e is presented here. Given the circumstances, including the presence in the record of other relevant financial statements, including that of Sundram, it was reasonable for Commerce to rely on those statements rather than use a partial translation or reopen the record.

### III

For the foregoing reasons, we affirm the Trade Court's judgment.

**AFFIRMED**